# THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| KATHY A. PALMER ) | Case No. 05-6017 |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |
| ) | |
| BRIAN K. FAIRCLOTH ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. Proc. No. 06-76 |
| ) | |
| KATHY A. PALMER, ) | |
| ) | |
| Debtor. ) | |
| ) | |

## MEMORANDUM OPINION

Brian K. Faircloth ("Faircloth") filed this adversary proceeding to except an alleged debt owed to him by Kathy A. Palmer (the "Debtor") under 11 U.S.C. § 523(a)(2)(A), or to deny entry of a discharge pursuant to § 727(a)(4)(A). More specifically, Faircloth asks this court to find that the Debtor fraudulently induced him to loan her monies by promising to repay him at a later date when she had the appropriate funds. In the alternative, Faircloth asks this court to find that at the time the Debtor filed her bankruptcy petition, she knowingly and fraudulently made a false oath or account by undervaluing her home on Schedule A.

The court held a trial in this case on June 7, 2007, in Martinsburg, West Virginia, at which time the

court took the case under advisement. For the reasons stated herein, the court will deny the relief sought by Faircloth in his adversary complaint.

## I. BACKGROUND

Faircloth and the Debtor began dating around December 1994. Their on again, off again relationship continued from December 1994 through December 2005, when the Debtor ended the relationship for good. From June 2004 through December 2005, Faircloth allegedly loaned her a total of $15,864.00 in a series of small transactions. The money he allegedly loaned was used by the Debtor, among other things, to retire personal debts, to acquire equity in her real and personal property, and to purchase Christmas gifts for her children. Faircloth stated that he continued making these alleged loans to the Debtor because he always believed that she intended to repay him when her financial situation improved. The Debtor, however, testified that Faircloth gifted the monies to her on the grounds that he was financially able to give her the money, he loved her, and he wanted to help her improve her financial well-being. As proof that the total amount "loaned" was really a gift, the Debtor testified that she wrote three separate $500.00 checks to Faircloth in an effort to "give back" to Faircloth a portion of what he had "given" her; however, Faircloth never cashed the checks. According to the Debtor, Faircloth's repeated assertions that the monies he "gave" her were "gifts," coupled with his refusal to accept any "repayment" from her, led the Debtor to conclude that all of the monies he transferred to her between June 2004 and December 2005 were gifts.

The Debtor filed her Chapter 7 bankruptcy petition on October 14, 2005. Faircloth personally paid her filing fee and her attorney's fees. The Debtor listed the value of her real property as $88,600.00 in Schedule A of her petition. Also, in her initial schedules, the Debtor did not list Faircloth as a creditor on the grounds that she did not believe that she owed him any money. On October 25, 2005, however, Faircloth presented her with a contract, which called for the monies he had "loaned" her between June 2004 and December 2005 to be repaid. The Debtor did not sign the contract. Instead, with the advice of her counsel, she amended her Schedule F and listed Faircloth as an unsecured, pre-petition creditor.[1]

---

[1] Faircloth alleges that he also loaned the Debtor money after she filed her bankruptcy. Any post-petition loan made to the Debtor is not subject to discharge in her bankruptcy and is not

-2-

## II. DISCUSSION

Faircloth filed this adversary proceeding under §§ 523(a)(2)(A) and 727(a)(4)(A) to either have the "debt" owed to him excepted from discharge, or to deny entry of the Debtor's discharge. The court will address each count in turn.

### A.    Section 523(a)(2)(A)

Faircloth asks this court to except numerous small loans totaling $15,864.00 from the Debtor's Chapter 7 discharge on the basis that she falsely promised to repay him, which induced him to continue making loans to her.[2]

Section 523(a)(2)(A) states that any debt "for money . . . to the extent obtained, by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition" shall be excepted from discharge. The party asserting a cause of action arising under § 523(a)(2)(A) bears the burden of proof by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279 (1991). Exceptions to discharge are narrowly construed in favor of a debtor in furtherance of the "fresh start" objective of bankruptcy protection. *Id*. at 286. The purpose of § 523(a)(2)(A), however, is "to make certain that those who obtain property by fraudulent means are not afforded bankruptcy protection" because bankruptcy protection is only afforded to honest, but unfortunate debtors. *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997).

To prove a § 523(a)(2)(A) cause of action, a creditor must satisfy four elements: "(1) that the debtor made a fraudulent misrepresentation; (2) that the debtor's conduct was with the intention and purpose of deceiving or defrauding the creditor; (3) that the creditor relied on the debtor's representations or other fraud; and (4) that the creditor sustained loss and damage as a proximate result of the representations of fraud." *Boyuka v. White (In re White)*, 128 Fed. Appx. 994, 998 (4th Cir. 2005). *See also Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 134 (4th Cir. 1999) (holding that "a plaintiff must prove four elements: (1) a fraudulent misrepresentation; (2) that induces another to act or

---

adjudicated in this Memorandum Opinion.

[2] Plaintiff's Exhibit 3, a spreadsheet compiled by Faircloth, details the various loan transactions involving him and the Debtor.

-3-

refrain from acting; (3) causing harm to the plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation."). A creditor can satisfy the first element by showing that the debtor made a representation "known to be false or recklessly made without knowing whether it was true or false." *White*, 128 Fed. Appx. at 998.

According to the Debtor's testimony, Faircloth did not want to be "repaid" because such a repayment would belittle his gifts. Moreover, according the Debtor, Faircloth stated to her that he was motivated by what he perceived to be his "Christian duty" to help her with her financial difficulties. In support of this testimony, the Debtor introduced three checks payable to Faircloth for $500.00 each, which he never cashed. The court finds the Debtor's testimony credible in this respect. However, even assuming that the monies Faircloth transferred to the Debtor were loans and not gifts, Faircloth simply does not provide any evidence that the Debtor knowingly or intentionally made false representations to him for the purpose of obtaining those loans. For example, the evidence does not show that the Debtor lured Faircloth into making larger additional loans by paying off older, smaller ones. At best, Faircloth established that he and the Debtor were contemplating marriage, and that if they had married, any loans would be forgiven. The evidence does not establish, however, that the Debtor made false promises of marriage in exchange for continued, additional loans. Thus, Faircloth failed to prove the first element of § 523(a)(2)(A), "that the debtor made a fraudulent misrepresentation," so it is not necessary for the court to address the remaining three elements of fraud.

While the result of a bankruptcy discharge may not be palatable to creditors who rely on promises of repayment, debtors in bankruptcy – with Congressional sanction – are entitled to walk away from such promises so long as the debtor did not act fraudulently in inducing a creditor to loan the debtor money pre-petition. Without any evidence of that type of fraud, however, the debt owed to Faircloth is indistinguishable from any other unsecured debt, and Faircloth's claim is not entitled to any special treatment. Because Faircloth has not satisfied his burden of proof under § 523(a)(2)(A), any debt owed to him is dischargeable.

**B.     Fraudulent Misrepresentation Under § 727(a)(4)(A)**

Failing to except his particular "debt" from the Debtor's discharge under § 523, Faircloth seeks to deny entry of the Debtor's discharge as to all debts under § 727(a)(4)(A), which provides:

–4–

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account . . . .

Faircloth argues that the Debtor violated § 727(a)(4)(A) when she listed the value of her home at $88,600.00 on Schedule A of her bankruptcy petition. According to Faircloth, the appraised value of the Debtor's home is $134,000.00, and the Debtor's verified statement in her schedule regarding the value of her home was knowingly and fraudulently false.

In order "[t]o deny a debtor discharge under [§ 727(a)(4)(A)], a plaintiff must prove . . . that: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case." *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000). The party objecting to discharge has the burden of proof by a preponderance of the evidence. Fed. R. Bankr. P. 4005.

When the Debtor ascribed the $88,600.00 value to her home on Schedule A, she was required to list, under penalty of perjury, the "current value" of her interest in her real property. 28 U.S.C. § 1746; Official Form B6A. "Current value" is generally synonymous with "fair market value" and the value determination is to be made as of the petition date. *See* 11 U.S.C. § 522(a)(2) (requiring that exemptions be taken from the property's "fair market value, as of the date of the filing of the petition"); *In re AWB Assoc., G.P.*, 144 B.R. 270, 279 (Bankr. E.D. Pa. 1992) (" '[M]arket value' . . . means the most probable price in cash, terms equivalent in cash, or in other precisely revealed terms, for which the appraised property will sell in a competitive market under all conditions requisite to a fair sale, with the buyer and seller each acting prudently, knowledgeably, and for self-interest, and assuming that neither is under undue duress."); *In re Spaulding*, No. 10657, 2005 Bankr. LEXIS 3190, at *8-9 (Bankr. M.D.N.C. 2005) (The Debtor's counsel cannot reasonably argue that the value of the property was $55,000.00 when the property was under a contract of sale – before the petition was filed – for $122,000.00.).

Faircloth bases his § 727(a)(4)(A) cause of action solely on the professional appraisal of Kevin Jackson, which was conducted on October 16, 2006. Although he conducted the appraisal in October

–5–

2006, his value determination was effective as of December 26, 2005, only two months after the Debtor filed bankruptcy. Mr. Jackson arrived at the appraised value after walking around the outside of the home and then walking through the interior of the home. Further, he used comparable sales from similar properties when arriving at the appraised value. According to Mr. Jackson, property values in the area, including the Debtor's property, were increasing in the fall of 2005. In Mr. Jackson's professional opinion, the Debtor's home had a current value of $134,000.00 in December 2005, which was only two months after the Debtor filed her bankruptcy petition. Faircloth alleges that the Debtor was motivated to value her home at $88,600.00 on the basis that, had she accurately reported her home's value at a higher figure, the Chapter 7 trustee may have sold it for the benefit of the creditors of her bankruptcy estate.

On the other hand, the Debtor testified that she reasonably believed the value of her home to be $88,600.00 as of her petition date. She testified that she derived the value of her home by considering the physical condition of the home, the assessed value for real estate tax purposes closest to the time of her bankruptcy filing, and the assessed value when she refinanced the home in the 1990's. According to the Debtor, the home needed a new roof, a new sump pump, mold from the walls needed to be removed, and the moldy walls needed to be replaced. In her opinion, substantial and extensive repairs were necessary before the home was even marketable. Mr. Jackson did not note the condition of the roof, the mildew on the interior walls, or the broken sump pump when he appraised the home, which likely would have diminished its market value. When the Debtor refinanced the home in the 1990's, the refinancing amount was only $45,000.00. The appraised value of her home in 2005, for real estate tax purposes, was about $88,600.00.[3] While neither the assessed value nor the Debtor's attribution of her home's worth may be the best estimate of its value considering the higher figured derived by Mr. Jackson in his appraisal, based on the facts of this case, the court does not find that the Debtor knowingly and fraudulently undervalued her home at $88,600.00. The court finds that the Debtor's testimony represented a credible account of her personal opinion as to the home's value, considering the physical condition of the house, the amount

---

[3] In Berkeley County, the tax assessed value is 60% of the appraised value of the home. Thus, by using the tax assessed value from 2005, which the Debtor testified to be $53,160.00, the Debtor believed that a fair representation of her home's value was $88,600.00, which is the value she listed on Schedule A.

of her refinancing in the 1990's, and the value attributed to it by the real estate tax assessment. Therefore, the court finds no evidence of fraud on the part of the Debtor in connection with the value she attributed to her house in connection with her bankruptcy filing, and, thus, no violation of § 727(a)(4)(A).

### III. CONCLUSION

For the foregoing reasons, this court will deny Brian Faircloth's § 523(a)(2)(A) claim seeking to have the "debt" owed to him excepted from the Debtor's bankruptcy discharge, and will deny Faircloth's § 727(a)(4)(A) claim to deny entry of the Debtor's discharge. The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021.